

**SIGNED this 17 day of February, 2011.**

_____
**JOHN T. LANEY, III**
**CHIEF UNITED STATES BANKRUPTCY JUDGE**
_____

IN THE UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF GEORGIA
VALDOSTA DIVISION

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | CASE NO.: 05-70033- JTL |
| LYNNE ANN SAUNDERS | ) | |
| | ) | |
| Debtor. | ) | CHAPTER 7 |

**Memorandum Opinion**

This matter comes before the Court on the Trustee's Motion to Close Case and

Retain Jurisdiction over Asset and the Trustee's Objection to Debtor's Amended Claim

of Exemptions.  The Court heard oral arguments on the motions on December 15, 2010.

At the conclusion of the hearing, the Court took the matters under advisement and

permitted the parties to file letter briefs. For the reasons set forth below, the Court will

deny the Trustee's Motion to Close Case and Retain Jurisdiction over Asset and overrule

the Trustee's Objection to Debtor's Amended Claim of Exemptions.

## Background

The Debtor filed this Chapter 7 case on January 10, 2005. On October 17, 2001, the

Debtor's parents executed a deed transferring certain real property, located in Tifton,

Georgia, to the Debtor and the Debtor's four siblings.  The parents reserved a life estate

in the property. As of the date of the transfer, the parents were both 80 years old, and they

are alive today.  The Debtor's one-fifth remainder interest was not originally scheduled

because the Debtor claims she was unaware of this transfer on the date of filing.  In

March 2010, the Debtor amended her schedules to reflect her interest in the property, and

she claimed an exemption for this interest.[1]  The Trustee seeks authority to close the case

without abandoning the vested remainder interest in the real estate, allowing the

possibility of reopening the case upon the death of the Debtor's parents to sell the

Debtor's interest.

Evidence of the property's value was not entered into evidence.  The Debtor's brief

states that an appraiser valued the property at $73,000 as of the date of the petition, and

the Trustee's brief states that a Tifton realtor valued the property between $85,000 and

$95,000 as of December 2006.  The Trustee's brief states that the current Tift County Tax

Assessor's valuation of the property is $77,356.  For this opinion, the Court will assume a

best case scenario for the property's value.[2]  The Debtor's one-fifth interest in $95,000 is

---

[1] The Trustee originally objected to the claimed exemption, alleging that the Debtor concealed her interest
in the property. At the December 15 hearing and in the Trustee's brief, the Trustee stated that he accepts the
Debtor's assertion that she was not aware of her interest in the property and that he no longer objects to the
amended claim of exemption.

[2] As the Court later explains, the Trustee bears the burden of proving circumstances sufficient to justify
granting the motion.  The Court assumes a best case scenario for the Trustee in order to save the parties the
time and expense of a full evidentiary hearing on the property's value.  The Court also notes that the real

$19,000. After an assumed 10% cost of sale, the Trustee's commission, and the Debtor's

$8,691.69 exemption are subtracted, there would be a few thousand dollars remaining.

The Debtor's unsecured debt, according to her schedules, is $39,003.89.

## Conclusions of Law

It is "well-recognized that a bankruptcy proceeding may be reopened to

administer estate assets." In re Zinchiak, 406, F.3d 214, 224 (3d Cir. 2005); see also 11

U.S.C. § 350(b) ("A case may be reopened in the court in which such case was closed to

administer assets, to accord relief to the debtor, or for other cause.")  It is also well-

known that a vested remainder interest in real property is property of the estate. See, e.g.,

Matter of Garten, 52 B.R. 497 (Bankr. W. D. Mo. 1985).

A threshold issue in this case is whether a bankruptcy court has the power, after a

case is closed, to retain jurisdiction over a remainder interest until the life tenant(s) die.

The Trustee's brief is conspicuously silent on this issue, and while the Debtor's brief

rightfully distinguishes the instant facts from the facts of the cases cited by the Trustee,

the Debtor offers no argument or caselaw explaining why the Court does not have this

power.  The Court's own research yielded no help.  The Court will assume, without

deciding, that it does have this power under  § 105(a) of the Bankruptcy Code.

The next question is whether the Court *should* use this equitable power to retain

jurisdiction.  The Court notes that the procedural posture of the motion is somewhat

awkward.  It is not a motion to reopen a case—it is essentially a motion seeking to close

the case without abandoning a known asset.  If the Court grants the instant motion, the

Court would not contemporaneously be granting a future motion to reopen.  But the

---

estate has almost surely dropped in value from December 2006 because of the widespread depreciation in
real estate prices.

converse is not true: if the Court denies the motion, the denial precludes a future motion because any property scheduled and not administered when the case is closed is abandoned to the Debtor. See 11 U.S.C. § 554(c). Nevertheless, the Court believes that the instant motion and a motion to reopen are similar enough to use the same standards for granting each motion. The moving party bears burden of showing circumstances sufficient to justify reopening a case, see, e.g., In re Antonious, 373 B.R. 400, 405 (Bankr. E.D. Pa. 2007), and so the Trustee has the burden of demonstrating circumstances sufficient to justify retaining jurisdiction to later reopen. The Court's discretion to reopen "depends upon the circumstances of the individual case and accords with the equitable nature of all bankruptcy proceedings." Matter of Case, 937 F.2d 1014, 1018 (5th Cir. 1991). Accordingly, the Court will inquire into whether the benefits of granting the motion outweigh the burdens, taking into consideration the equitable policy underpinnings of the Bankruptcy Code.

The Trustee hopes to liquidate the Debtor's interest in the real property when the interest ripens into a fee simple, thus providing a dividend to unsecured creditors. Using the best-case value of the property, unsecured creditors would receive a few thousand dollars; the unsecured debt is $39,003.89. Thus, selling the property would yield a small dividend to each unsecured creditor. This is the possible benefit of granting the motion. Again, granting the current motion does not mean a future motion to reopen would be granted; circumstances could change such that granting the motion to reopen in the future would be inappropriate. The Trustee contends that the motion should be granted not based on any current valuation of the property but based on a possible appreciation in value by the time the remainder interest becomes a fee simple interest. The Trustee states

that a future boom in the real estate market, or possible additions and improvements by the life tenants, or potential, beneficial changes in adjacent property that increase the value of the Debtor's interest should be taken into account.  The Court will not use its equitable powers based on remote, speculative occurrences.

Many considerations militate against granting the motion.  While bankruptcy's policy of creditor repayment would be served by granting the motion, competing policies would be undermined.  The policy of expeditious and inexpensive administration and closing of a bankruptcy case is reflected by the duties of trustees and the Federal Rules of Bankruptcy Procedure. See 11 U.S.C. § 704(a) (The trustee shall "close [the] estate as expeditiously as is compatible with the best interests of the parties in interest."); Fed. R. Bankr. P. 1001 ("These rules shall be construed to secure the just, speedy, and inexpensive determination of every case and proceeding.").  The possibility of opening this case at an indeterminable point, possibly years later, causing all parties considerable time and expense for the sale of a property that might bring in a few thousand dollars goes against these policies.

Moreover, the Debtor's fresh start would be severely undermined.  While no evidence of the property's value was entered into evidence, it is safe to say that the value of the Debtor's current interest is much less than it will be when the interest becomes a fee simple.  The Debtor claimed an exemption for her remainder interest, and the Trustee does not object to the claimed exemption.  Exemptions exist to support a debtor's fresh start.  If the Trustee was allowed to circumnavigate this full exemption by waiting for when the interest is worth more to liquidate the property, the entire idea behind exemptions would be made uncertain.  As a general matter, allowing the Trustee to have

the option to reopen a case when particular piece of property accrues in value above the exemptable amount is not a good policy.

Finally, the Court is mindful of the human aspect of the case. The property is currently the Debtor's home.  Granting the motion would force the Debtor to live under the cloud of awaiting her parents' death for when she has to leave the property. Moreover, the Debtor has not acted inequitably. She timely amended her petition to reflect the remainder interest when she discovered it.  And she will not receive a windfall if the motion is not granted—she will receive a 1/5 interest in what seems to be a modest piece of real estate.

After considering the circumstances of the case, including the benefits of granting the motion, the burdens associated with granting the motion, and the equities and policies involved, the Court determines that the Trustee has not met his burden in showing circumstances sufficient to justify granting the motion.

## Conclusion

The Court will deny the Trustee's Motion to Close Case and Retain Jurisdiction over Asset and overrule the Trustee's Objection to Debtor's Amended Claim of Exemptions.  Orders in accordance with this memorandum opinion will be entered.